MARVIN E. STILES, APPELLEE, V. SKYLARK MEATS, INC., A
NEBRASKA CORPORATION, APPELLANT.
438 N.W.2d 494

Filed April 21, 1989.   No. 87-816.

Russell S. Daub, of Daub Haggart & Rebensdorf, for appellant.

Alan G. Stoler for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Following a bench trial, the district court found that defendant-appellant, Skylark Meats, Inc., breached its contract of employment with plaintiff-appellee, Marvin E. Stiles, by discharging him without good cause, and entered judgment in favor of Stiles in the sum of $48,000. In this appeal from that judgment, Skylark Meats assigns five errors, which may be summarized as challenging the district court's findings that (1) there was no good cause for the discharge and (2) Stiles made a reasonably diligent effort to obtain other employment. We affirm.

Skylark Meats is a corporation in the business of preparing, packaging, and selling meat, fish, and poultry. Stiles began work for Skylark Meats in July 1977, managing its meat-processing room. After Stiles had been working for Skylark Meats for almost $2^{1}/_{2}$ years, the parties, on December 31, 1979, entered into a written employment agreement. The agreement provided in relevant part that Stiles was to serve as the manager of Skylark Meats' processing room at a salary of $46,800 per year and that Stiles could terminate his employment at any time upon notice, but that Skylark Meats could terminate Stiles' employment "only for breach of the terms [of the agreement] by Stiles or for other good cause." Stiles' salary was increased during the course of his employment, so that at the time of his discharge on February 12, 1986, he was earning $53,560 per year.

We begin by recalling that words in a contract are to be given their plain and ordinary meaning as reasonable persons would

understand them. *Reeves v. Hill Aero, ante* p. 345, 436 N.W.2d 494 (1989); *Kreikemeier v. McIntosh*, 223 Neb. 551, 391 N.W.2d 563 (1986). In the context of employment contracts, "good cause" for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice. *Roach v. Consolidated Forwarding Co.*, 665 S.W.2d 675 (Mo. App. 1984).

In an action for breach of a contract of employment, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Smith v. City of Omaha*, 220 Neb. 217, 369 N.W.2d 67 (1985). Stiles thus had the burden of proving his contract of employment with Skylark Meats and that Skylark Meats breached that contract by firing him for other than good cause. The burden then shifted to Skylark Meats to prove good cause indeed existed for Stiles' discharge. See *Stoffel v. Metcalfe Construction Co.*, 145 Neb. 450, 17 N.W.2d 3 (1945). See, also, *Rasch v East Jordan*, 141 Mich. App. 336, 367 N.W.2d 856 (1985); *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (1981); *Rosecrans v. Intermountain Soap & Chem. Co.*, 100 Idaho 785, 605 P.2d 963 (1980). According to *Pugh v. See's Candies, Inc., supra*, an employee may attack an employer's offered explanation as pretextual.

Little, if any, purpose would be served by burdening this opinion with a detailed recitation of the numerous conflicts in the evidence relating to the bases for Stiles' discharge. Suffice it to say that through its evidence, Skylark Meats attempted to convince the district court that Stiles was an incompetent manager unable to cope with Skylark Meats' growth (when he began his employment, Stiles supervised 7 to 10 people, whereas at the time of his discharge, he was supervising 35 to 40 people); that he was insubordinate; that he did not understand and could not apply U.S. Department of Agriculture regulations; that he kept inaccurate cost records; that he produced inferior products; and that he did not know how to package or present a product to existing or potential customers, as a consequence of which Skylark Meats lost sales.

On the other hand, Stiles adduced evidence which, if believed by the trier of fact, established that he was a capable manager; that he was not insubordinate but had conflicts with upper management because he sought to comply with USDA regulations as he should; that he kept as accurate cost records as the quality of meats and equipment he was given permitted; that he produced products as good as the meats and environment supplied him permitted; and that he made as good a package and presentation of products to customers and potential customers as the quality of meat supplied him permitted. Stiles testified that on one occasion when discussing the regulations he was trying to meet, one of Skylark Meats' owners said, "I really don't know whether you're working for USDA or Skylark Meats anymore." One former Skylark Meats employee testified that Stiles was forced to use spoiling meat and, on cross-examination by Skylark Meats, expressed the view that Stiles was discharged because

> he was doing his job. And he didn't want to put out bad meat, and they wanted us to cut it, which is—I've seen it. I've cut it. I've sent it out. I cut meat into steaks. I put meat into the hamburger. I put meat into the sausage that was rancid that we had to put in there.

One USDA inspector refused to answer questions relating to the inspections he conducted at Skylark Meats, preferring, in his words, to "take the Fifth."

According to Stiles' son, a former assistant manager for Skylark Meats, one of the owners of Skylark Meats stated his father was discharged because Skylark Meats "wanted to head off in a different direction." Another supplier of meat products testified that Stiles had in the past worked for him managing 40 to 50 employees in the meat-processing room, and proved himself a good employee.

This appeal, arising out of suit on a contract, involves an action at law. *Reeves v. Hill Aero, supra.* In such an action tried to the court, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. In reviewing the trial court's judgment in such a case, the Supreme Court does not reweigh the evidence but, instead, considers the judgment in the light most favorable to the

successful party, with conflicts resolved in favor of the successful party, who is entitled to the benefit of every inference which can be reasonably deduced from the evidence. *State v. Smith, ante* p. 740, 437 N.W.2d 803 (1989); *Knutson v. Snyder Industries, Inc., ante* p. 374, 436 N.W.2d 496 (1989); *Reeves v. Hill Aero, ante* p. 345, 436 N.W.2d 494 (1989); *Mahler v. Bellis, ante* p. 161, 435 N.W.2d 661 (1989); *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988). In a bench trial, the judge sitting as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we do not reweigh the evidence on appeal. *Justice v. Hand*, 227 Neb. 856, 420 N.W.2d 704 (1988); *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988); *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987). Whether good cause existed for the discharge under the circumstances of the instant case, considering the contract language and the evidence, was a decision for the trier of fact. See *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (1981). Given the state of the evidence, it cannot be said that the district court was clearly wrong in finding that good cause to discharge Stiles did not exist.

As to the remaining assignment of error, Skylark Meats attacks not the amount of damages awarded but, rather, argues that the district court's implicit finding that Stiles made a reasonably diligent search for other employment is not supported by the evidence.

Skylark Meats correctly states that the measure of damages in a suit for breach of an employment contract for personal services is the amount of salary agreed upon for the period involved, less the amount which the servant earned, or with reasonable diligence might have earned, from other employment. *Ridenour v. Kuker*, 185 Neb. 321, 175 N.W.2d 287 (1970); *Henderson v. Joplin*, 191 Neb. 827, 217 N.W.2d 920 (1974). The burden rested with Skylark Meats to show that with the exercise of reasonable diligence Stiles could have obtained other employment. *Henderson v. Joplin, supra*; *Rase v. Southeast Nebraska Consol. School Dist.*, 190 Neb. 800, 212 N.W.2d 629 (1973).

Stiles testified that he applied to and made personal contacts with a number of different employers within the meat industry immediately after he was dismissed, but that none had openings. The only countervailing evidence in this regard is the testimony of the same supplier of meat products who had characterized Stiles as a good employee. This supplier testified that although his operation did not currently have an opening for Stiles to fill, various openings below manager of the processing department had become available since 1986. Stiles, however, testified that when he applied to this supplier, he was told there were no openings and that he was still looking for work in the meat industry.

The evidence shows that since his discharge, Stiles has worked as a newspaper distributor. In addition, contrary to Skylark Meats' misapprehension that such does not constitute the pursuit of other employment, *Ridenour v. Kuker, supra*, Stiles has also sold, through an entity he owns, automobile cleaning products to automobile dealers and detail shops.

Under that state of the record, it cannot be said the district court's factual finding concerning Stiles' efforts to find other employment is clearly wrong.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.