THOMAS M. SCHUESSLER, APPELLEE, V. BENCHMARK MARKETING AND CONSULTING, INC., APPELLANT.
500 N.W.2d 529

Filed May 14, 1993.   No. S-90-1074.

Virgil J. Haggart, Jr., of Daub & Haggart, for appellant.

Robert F. Peterson, of Laughlin, Peterson & Lang, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Benchmark Marketing and Consulting, Inc. (Benchmark), appeals the district court's judgment in favor of Thomas M. Schuessler for wrongful discharge from employment. The court awarded Schuessler damages of $167,089.93, as well as attorney fees and costs. We affirm in part, and in part reverse and remand for further proceedings.

On April 10, 1989, when he was fired by Benchmark's owner and president, David Haggart, Schuessler was Benchmark's vice president and chief operating officer. Schuessler's employment contract covered the period from January 1 to December 31, 1989. His compensation included a salary of $2,000 per week, plus a bonus of 35 percent of Benchmark's net profits. Benchmark operated a telemarketing business which placed luxury car owners in touch with prospective buyers. The fee for this service was often charged to the buyer's credit card.

After being fired, Schuessler brought suit for wrongful discharge. Benchmark cross-petitioned, seeking damages for, among other things, Schuessler's alleged breach of his employment contract. Prior to trial, federal agents raided Benchmark's offices, seizing the company's records and equipment. At the time of trial, a federal investigation of the company for mail and wire fraud was pending. The company twice moved the trial court to stay Schuessler's case, arguing

that a proper defense in the wrongful discharge suit would require disclosure of facts that might be incriminatory in the federal criminal investigation. The district court overruled both motions. After the court overruled the first motion to stay, Benchmark dismissed its cross-petition against Schuessler.

At trial, Schuessler established that he had met the sales quotas required by his contract and offered other evidence that he had complied with his contractual obligations. Benchmark alleged several reasons for Schuessler's termination, including (1) sexual harassment of at least one female employee, (2) Schuessler's unauthorized pay increase for a subordinate employee, (3) Schuessler's personal use of company time and equipment, and (4) Schuessler's failure to properly supervise the employees under his control.

The district court found that Schuessler had not acted in a manner warranting termination by Benchmark. The court further found that Schuessler had carried out his responsibilities with due diligence and in the best interests of Benchmark. The court awarded Schuessler damages of $167,089.93, attorney fees of $1,406.82, and costs. Benchmark then instituted this appeal.

Benchmark first asserts that the district court erred by refusing to stay the proceedings pending the outcome of the federal criminal investigation. Schuessler, Benchmark notes, was contractually responsible for training and supervising the telephone salespersons and for "maintaining the integrity of Benchmark in sales presentation." Benchmark argues that if the salespersons did indeed make misrepresentations to customers, it would indicate that Schuessler had not met his contractual obligations, and would thereby prevent his recovery for wrongful discharge. However, Benchmark reasons, such a showing might also subject the company and its employees to criminal sanctions. Benchmark concludes that by requiring it to proceed to trial, the district court prevented the company from properly defending itself and thus violated its due process rights. Despite the resourcefulness of Benchmark's argument, we cannot agree that the district court abused its discretion by denying the motions to stay.

There is no constitutional right to have civil proceedings

stayed pending the outcome of a criminal investigation. *Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198 (Fed. Cir. 1987); *S. E. C. v. First Financial Group of Texas, Inc.*, 659 F.2d 660 (5th Cir. 1981); *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal. 1989). However, courts inherently possess the power to stay such proceedings when required by the interests of justice. *Amer. Life Ins. Co. v. Stewart*, 300 U.S. 203, 57 S. Ct. 377, 81 L. Ed. 605 (1937); *Landis v. North American Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *Afro-Lecon, Inc., supra.*

The burden of establishing that a proceeding should be stayed rests on the party seeking the stay. See, *Landis, supra*; *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983); *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656 (D. Del. 1990). Furthermore, when the moving party seeks to stay a trial, the decision of whether to grant the motion is vested in the discretion of the trial court, and its decision will not be overturned on appeal absent an abuse of that discretion. See, *American Life Ins. Co., supra*; *Landis, supra*; *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989); *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204 (8th Cir. 1973), *cert. denied* 414 U.S. 1162, 94 S. Ct. 926, 39 L. Ed. 2d 116 (1974). In making its decision, the trial court should balance the competing needs of the parties, taking into account, among other things, the interest of the courts, the probability that proceeding will work a constitutional violation on the movant, the presence or absence of hardship or inequity, and the burden of proof. See, *American Life Ins. Co., supra*; *Landis, supra*; *Gold, supra*; *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979), *reh'g denied* 611 F.2d 1026 (5th Cir. 1980); *General Dynamics Corp., supra*; *Gordon v. Federal Deposit Insurance Corporation*, 427 F.2d 578 (D.C. Cir. 1970).

With these general principles in mind, we turn to Benchmark's argument. Although Benchmark properly argues that the failure to stay creates, at least, the *potential* for a constitutional violation, the company paints certain constitutional protections with too broad a brush.

In its brief, Benchmark contends that its employees

"primarily, if not exclusively," possessed the information regarding possible misrepresentations by salespersons. Brief for appellant at 16. Benchmark thus argues that the trial court, by refusing to grant the stay, presented the company and its employees with a Hobson's choice: "either [the employees] present such proof, and thereby risk self-incrimination in the pending federal criminal proceedings, or they do not, and thereby prevent Benchmark from fully defending itself in [Schuessler's case]." Brief for appellant at 16.

Only Benchmark was made a defendant to this action. Thus, only Benchmark may claim that proceeding to trial unconstitutionally hindered its ability to defend itself. Furthermore, as a corporation, Benchmark has no right to invoke the privilege against compulsory self-incrimination. See, U.S. Const. amends. V and XIV and Neb. Const. art. I, § 12 (hereinafter jointly referred to as Fifth Amendment protection); *Wilson v. United States*, 221 U.S. 361, 31 S. Ct. 538, 55 L. Ed. 771 (1911). Accord *United States v. Kordel*, 397 U.S. 1, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970). Moreover, because the Fifth Amendment protection is personal, Benchmark may not assert its employees' protection on their behalf. See, *United States v. Dowdy*, 486 F.2d 1042 (5th Cir. 1973), *cert. denied* 415 U.S. 992, 94 S. Ct. 1592, 39 L. Ed. 2d 888 (1974); *United States v. Goodwin*, 470 F.2d 893 (5th Cir. 1972), *cert. denied* 411 U.S. 969, 93 S. Ct. 2160, 36 L. Ed. 2d 691 (1973).

Therefore, Benchmark's only viable constitutional argument focuses on the conceivable invocation of the Fifth Amendment by every party possessing the information essential to Benchmark's defense. The company contends that requiring it to proceed to trial while unable to elicit this necessary information violates its due process right to a fair trial.

Benchmark's argument is not without some precedential support. In *Afro-Lecon, Inc., supra*, the U.S. Court of Appeals for the Federal Circuit addressed the inability of a corporation to provide information because its employees invoked the Fifth Amendment. In *Afro-Lecon, Inc.*, the plaintiff corporation moved to stay *its own suit* pending completion of related criminal proceedings against it. The administrative board which heard the corporation's claim

denied the stay and dismissed the suit because the corporation had failed to answer the defendant's interrogatories and a board-ordered accounting. Vacating the judgment, the court of appeals held that it was error to refuse the stay and dismiss the suit because, inter alia, the record indicated that the Fifth Amendment would be invoked by the employees possessing the information necessary to answer the interrogatories and accounting. As our later discussion will indicate, however, *Afro-Lecon, Inc.*, is distinguishable from the case at bar.

The parties have not cited, nor has our research discovered, any cases in which a defense has been hindered in the exact way that Benchmark claims its defense has. However, several cases, including *Afro-Lecon, Inc.*, have dealt with the analogous situation of a corporation's failure, or inability, to access the information necessary to answer interrogatories. See, e.g., *Kordel, supra*; *Afro-Lecon, Inc., supra*; *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204 (8th Cir. 1973), *cert. denied* 414 U.S. 1162, 94 S. Ct. 926, 39 L. Ed. 2d 116 (1974).

Under Fed. R. Civ. P. 33(a), a corporation which receives interrogatories is to appoint an agent "who shall furnish such information as is available to the [corporation]." See, also, Neb. Ct. R. of Discovery 33(a) (rev. 1992). Analogously, if Benchmark had a similar "agent" to testify, without fear of self-incrimination, regarding any misrepresentations made by operators, Benchmark could not claim a violation of its constitutional rights, for the company's only legitimate constitutional argument is that it could not elicit the information necessary to properly defend itself. (Recall that Benchmark has no Fifth Amendment privilege and cannot assert its employees' privilege on their behalf.)

Although federal courts have noted that a corporation cannot simply appoint an agent who will invoke the Fifth Amendment—thereby giving the corporation indirect Fifth Amendment protection—those same courts have allowed a partial exception to the rule 33(a) requirement where *no* agent can be found to answer the interrogatories without incriminating himself or herself. *Afro-Lecon, Inc., supra*; *General Dynamics Corp., supra.* See *Kordel, supra* (discussing

the possible use of a protective order pursuant to Fed. R. Civ. P. 26(c) (formerly rule 30(b)). In that limited situation, the federal courts have indicated that a protective order limiting or "staying" discovery may be appropriate during the pendency of the criminal proceedings. *Kordel, supra*; *Afro-Lecon, Inc., supra*; *General Dynamics Corp., supra*.

Despite those holdings, Benchmark's situation is distinguishable from the situations requiring protective orders for corporations which cannot elicit information essential to their cases. A stay of a civil action, especially a stay of indefinite duration, is an extraordinary remedy. And, as we have already noted, the burden of establishing the need for such a remedy falls upon the party seeking the stay, here, Benchmark. See *Landis v. North American Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (stating that the applicant for a stay must make a clear showing of "hardship or inequity" if there is a fair possibility of damage to another party). Accord *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983). A stay of indefinite length would obviously damage Schuessler. Furthermore, Benchmark has failed to meet its burden.

In the "rule 33(a)" cases, the federal courts clearly limited the protective-order exception to "extreme cases, where no corporate agent can answer the propounded interrogatories without being subject to a 'real and appreciable risk' of self-incrimination." *General Dynamics Corp.*, 481 F.2d at 1210. See, also, *Kordel, supra*; *Afro-Lecon, Inc., supra*. Applying a similar test to the case at bar, we find that Benchmark has failed to show that it could find no individual to testify as to the relevant facts, and thus has not shown inequity in being required to proceed to trial.

Benchmark's motion to stay was accompanied by an affidavit from the company's attorney. The affidavit stated:

> Because of the similarity of the evidence and issues involved in the two matters, the Defendant and its officers and employees cannot present the testimony and evidence in this action which are necessary to defend against the Plaintiff's Petition, and which are necessary to prove the Defendant's Cross-Petition, without subjecting themselves to the possibility of incrimination in the pending

criminal investigation . . . .

The mere affidavit of Benchmark's attorney, without more, simply does not provide enough evidence of inability to defend to convince us that the district court abused its discretion when it denied the stay. Benchmark's workforce comprised approximately 25 employees. Of these 25, at least 5 did not work as salespersons, the individuals most likely to be criminally responsible for sales misrepresentations. Furthermore, we have no evidence that any employees, much less all of them, would actually invoke the Fifth Amendment.

Benchmark argues that it would have been futile and a "waste of the trial court's and the parties' time" to call its employees to the stand, only to have them invoke their Fifth Amendment privilege. Yet Benchmark could have deposed the employees, or even the sales representatives, to indicate that no agent could be found to introduce the necessary evidence. Such action, although perhaps time-consuming, is hardly an undue burden, in light of Benchmark's request for a stay of the proceedings for an indeterminate period of time.

Finally, Benchmark's showing is not aided by the statement that the company's "officers and employees cannot present the testimony and evidence in this action which are necessary to defend against the Plaintiff's Petition." Because Benchmark is concerned only with eliciting the evidence necessary for its defense, the question is whether *any person* could provide the information without fear of self-incrimination. Nothing in the affidavit or record indicates that only Benchmark's employees possessed the pertinent information. This insufficient showing is further highlighted by a statement from Benchmark's brief: "The knowledge and information necessary to present this proof is *primarily, if not exclusively*, in the possession of . . . Benchmark employees." (Emphasis supplied.) Brief for appellant at 16.

We will not speculate as to what evidence might have persuaded the district court to grant the stay or what showing would persuade us that the court abused its discretion. We simply hold that based on the showing made to it, the court did not err by denying the stay. The U.S. Supreme Court made a similar determination in *United States v. Kordel*, 397 U.S. 1, 90

S. Ct. 763, 25 L. Ed. 2d 1 (1970), wherein the Court reversed a decision of a U.S. Court of Appeals which addressed the propriety of a motion to stay proceedings or defer answers to interrogatories. The Supreme Court, addressing the movants' argument that a situation might arise where no agent could answer a corporation's interrogatories without self-incrimination, stated:

> [W]e need not decide this troublesome question. For the record before us makes clear that even though the [movants] had the burden of showing that the Government's interrogatories were improper, they never even asserted, *let alone demonstrated*, that there was no authorized person who could answer the interrogatories without the possibility of compulsory self-incrimination. To the contrary, *the record shows that nobody associated with the corporation asserted his privilege at all.*

(Emphasis supplied.) 397 U.S. at 9.

Furthermore, when we balance the benefits and hardships associated with denying the stay, we again find no abuse of discretion. The potential for an extremely long delay (no criminal charges had yet been filed) weighs in favor of denial. " 'Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.' " *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989) (quoting *In re Mid-Atlantic Toyota Antitrust Litigation*, 92 F.R.D. 358 (D. Md. 1981)). The record indicates that at the time of trial, Schuessler had only recently found substitute employment, earning much less than he had at Benchmark; thus, an expeditious resolution would clearly benefit him. The Nebraska Constitution also calls for prompt resolution of disputes: "[E]very person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered *without denial or delay*." (Emphasis supplied.) Neb. Const. art. I, § 13. Finally, it would also benefit the court not to retain a dormant case on its docket for a period that could stretch into years.

The record does not indicate that Benchmark was deprived of a fair trial by the denial of its motion to stay. We may not, and

will not, speculate as to what privileges witnesses might have asserted or what defenses counsel might have raised had they been given the opportunity. We cannot conclude, based on the record before us, that the district court abused its discretion when it determined that the case should proceed to trial.

We now turn to the merits of the action before us. Restated, Benchmark alleges that the district court erred by (1) failing to find that Schuessler did not meet his burden of establishing that Benchmark did not have good cause to terminate him, (2) failing to find that Schuessler had materially breached his employment contract with Benchmark, (3) failing to find that Benchmark had good cause to terminate Schuessler, and (4) awarding excessive damages. Because we find the record insufficient to dispose of Benchmark's third contention, we find it necessary to remand the cause to the district court for further proceedings. However, to aid the district court in those proceedings, we will discuss the remaining issues presently before us and outline the ramifications of the court's findings on remand.

A contract for a definite term may not lawfully be terminated prior to the expiration of that term without good cause. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017 (2d Cir. 1985) (applying New York law); *Eales v. Tanana Valley Medical-Surgical*, 663 P.2d 958 (Alaska 1983); *Rosecrans v. Intermountain Soap & Chem. Co.*, 100 Idaho 785, 605 P.2d 963 (1980). Thus, Benchmark's termination of Schuessler's 1-year contract after 4 months was impermissible, absent good cause.

We have previously set forth the relative burdens in an action for breach of an employment contract. See *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). In *Stiles*, we stated that "the burden of proving the existence of a[n employment] contract and all the facts essential to the cause of action is upon the person who asserts the contract." *Id.* at 865, 438 N.W.2d at 496 (citing *Smith v. City of Omaha*, 220 Neb. 217, 369 N.W.2d 67 (1985)). However, our application of this rule to the facts in *Stiles* requires clarification. After stating the foregoing rule, we continued: "[The employee] thus had the burden of proving his contract of employment with [the employer] *and that [the employer] breached that contract by*

*firing him for other than good cause. The burden then shifted to* [*the employer*] *to prove good cause indeed existed for* [*the employee's*] *discharge.*" (Emphasis supplied.) *Id.*

Our statement, as the emphasized language reflects, may be perceived as improvidently assigning too great a burden to both parties in an action for breach of an employment contract. Although our statement appears to give both parties the burden of proof on the same element, that is not the case. The employee must initially prove the existence of the contract, its terms and his compliance with them until his discharge, the employer's breach, and damages. See, *Smith, supra*; *Rosecrans, supra*; *Rasch v East Jordan*, 141 Mich. App. 336, 367 N.W.2d 856 (1985). See, also, *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (1981), *appeal after remand* 203 Cal. App. 3d 743, 250 Cal. Rptr. 195 (1988). After he has done so, the burden then shifts to the employer to come forward with evidence that good cause existed for discharging the employee. *Stiles, supra*; *Pugh, supra*. See, also, *Stoffel v. Metcalfe Construction Co.*, 145 Neb. 450, 17 N.W.2d 3 (1945). If the employer produces sufficient evidence, the employee may rebut, and if in controversy, the issue goes to the trier of fact; however, the ultimate burden of proving wrongful termination remains with the employee. *Stiles, supra*; *Pugh, supra*.

Placing the *initial* burden of proving absence of good cause on the employee would lead to incongruous results. Doing so would require the plaintiff to anticipatorily rebut the employer's justifications for the termination. Rather, the employee proves absence of good cause simply by carrying the ultimate burden on the issue. See, *Stiles, supra*; *Pugh, supra*. We now proceed to the parties' contentions.

Benchmark first alleges that Schuessler has failed in his burden of proof. We disagree.

In a bench trial of a law action where the evidence is in conflict, this court, in reviewing the judgment, will presume that the trial court decided the controverted facts in favor of the successful party, and those findings will not be disturbed on appeal unless clearly wrong. It is not within the province of an appellate court to reweigh or resolve conflicts in the evidence. *Central States Health & Life v. Miracle Hills Ltd.*, 235 Neb.

592, 456 N.W.2d 474 (1990); *Norfolk Iron & Metal v. Behnke*, 230 Neb. 414, 432 N.W.2d 18 (1988).

As previously noted, Schuessler's initial burden was to prove the existence of the contract, its terms, his compliance with those terms until his discharge, the employer's breach, and damages. See, *Smith, supra*; *Pugh, supra*; *Rosecrans, supra*; *Rasch, supra*. He has done so. The record contains a copy of the contract, evidence of damages, proof that Schuessler was discharged 4 months into the 1-year contract, and testimony, which the trial court found credible, to the effect that Schuessler had complied with the contractual terms. Furthermore, there is competent evidence to support the court's finding that Benchmark's first three grounds for terminating Schuessler did not constitute good cause. (As we will discuss later, the court failed to make a finding on Benchmark's final ground for terminating Schuessler). Based on the record before us, we cannot say that the trial court erred in determining that Schuessler satisfied his burden of proof. Benchmark's argument to the contrary is without merit.

Benchmark next contends that the trial court erred by not determining that Benchmark had good cause to discharge Schuessler. Restated, Benchmark offers four "good causes" for Schuessler's discharge: (1) Schuessler's pay increase for a subordinate worker, (2) Schuessler's alleged failure to meet his contractual duties, (3) Schuessler's excessive personal use of Benchmark's time and property, and (4) Schuessler's alleged sexual harassment of Benchmark employees. In a related argument, Benchmark argues that the court erred by not finding that Schuessler materially breached the employment contract. Directly or indirectly, the trial court found for Schuessler on each ground.

Whether good cause existed for discharging an employee is a question of fact. *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). The merit behind each of Benchmark's first three arguments regarding cause thus ultimately depends on the resolution of a factual question, namely: (1) whether Schuessler's award of a bonus to a subordinate employee was impliedly authorized by Haggart, (2) whether Schuessler met his contractual responsibility of adequately training and

supervising Benchmark's sales representatives and "maintaining the integrity" of Benchmark, and (3) whether Schuessler adequately reimbursed Benchmark for his use of the company's facilities.

We find it unnecessary to set out the evidence bearing on each of these arguments. Suffice it to say that the parties offered enough conflicting evidence on each point to place each question in controversy. In its findings of fact, the district court answered each of the above-enumerated questions in the affirmative and found generally in Schuessler's favor.

A civil verdict will not be disturbed unless clearly erroneous. *Home Fed. Sav. & Loan v. McDermott & Miller, ante* p. 136, 497 N.W.2d 678 (1993). The district court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. *Id.; State ex rel. Grams v. Beach, ante* p. 126, 498 N.W.2d 83 (1993). Furthermore, in determining whether the evidence is adequate to support the trial court's decision, we consider the evidence in the light most favorable to the successful party, resolving every controverted fact in that party's favor and giving that party the benefit of every reasonable inference deducible from the evidence. *Home Fed. Sav. & Loan, supra; In re Estate of Markus*, 232 Neb. 947, 442 N.W.2d 883 (1989); *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

Based on the evidence, we cannot say that the district court erred in determining that Benchmark's first three grounds for terminating Schuessler did not constitute good cause. We thus proceed to Benchmark's final argument regarding cause.

The last of Benchmark's arguments on this issue, and the most troubling, concerns Schuessler's alleged sexual harassment of at least one of Benchmark's female employees. Benchmark contends that the alleged activities warranted Schuessler's termination and thus precluded his recovery for wrongful discharge. Based on the record before us, we cannot determine whether Benchmark's argument has merit. We therefore remand to the district court for further proceedings on this issue.

The record contains testimony from Haggart and a female employee alleging conduct by Schuessler that may constitute

sexual harassment. However, in its order the district court stated: "The Court further finds that the alleged improper conduct by [Schuessler] with [Benchmark's] female employees did not form a basis for discharge *since disclosure of such contact, if any in fact occurred, was subsequent to [Schuessler's] termination by [Benchmark]*." (Emphasis supplied.) We cannot agree with the district court that posttermination evidence of employee misconduct occurring during employment does not affect an employee's wrongful discharge recovery. (Such evidence will hereinafter be referred to simply as "posttermination evidence.")

Whether posttermination evidence may limit a wrongful discharge recovery is a question of law. We are thus obligated to reach a conclusion independent of the trial court's decision. See *Howard v. City of Lincoln, ante* p. 5, 497 N.W.2d 53 (1993); *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

Although we have not previously done so, we now hold that posttermination evidence is admissible as bearing on the employee's recovery in a wrongful discharge suit. Faced with somewhat disparate holdings in cases addressing this issue, we have chosen to apply the following rules from those holdings.

Because posttermination evidence of employee misconduct is necessarily discovered after an employee has been terminated, it can hardly be said to have provided a reason or "cause" for the termination. See, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988); *Flanigan v. Prudential Federal Sav. & Loan*, 221 Mont. 419, 720 P.2d 257 (1986), *appeal dismissed* 479 U.S. 980, 107 S. Ct. 564, 93 L. Ed. 2d 570. But see *Leahey v. Federal Exp. Corp.*, 685 F. Supp. 127 (E.D. Va. 1988). However, such evidence may limit the employee's recovery in a wrongful discharge case. Cf., *Wallace v. Dunn Const. Co., Inc.*, 968 F.2d 1174 (11th Cir. 1992) (addressing suit based on, inter alia, alleged sexual harassment); *Smith v. General Scanning, Inc.*, 876 F.2d 1315 (7th Cir. 1989) (addressing suit based on age discrimination); *Summers, supra* (addressing alleged discriminatory termination of employee). Thus, once an employee has established a case of wrongful discharge, the employer may limit recovery by

using posttermination evidence to prove employee misconduct which would have resulted in the justified termination of the employee. Cf., *Wallace, supra*; *Smith v. General Scanning, Inc., supra*; *Summers, supra*. Because the employee has already established that the contract was terminated for a reason other than good cause, and because the posttermination evidence bears only on the amount of recovery, the employer bears the burden of proving the misconduct and its ramifications. Cf., *Wallace, supra*; *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). See, also, *Summers, supra*.

Applying the foregoing rules to the case at bar, it becomes clear that the cause must be remanded for further proceedings. Because the sexual harassment, if it occurred, bears on the amount of Schuessler's recovery, the district court must make additional factual findings regarding the alleged misconduct. Although the district court found that Benchmark's final ground for terminating Schuessler had not been discovered when Schuessler was discharged, additional questions remained to be answered, namely, whether Benchmark had proved that the alleged misconduct actually occurred and, if so, whether the misconduct would justify termination. Cf., *Wallace, supra*; *Smith v. General Scanning, Inc., supra*; *Summers, supra*. If those questions are answered affirmatively, Schuessler is not entitled to recover damages.

Our holding today is in accord with many courts that have held that if posttermination evidence would justify termination, the employee may not recover any damages for the period following the actual discharge. See, e.g., *In re Nagel*, 278 F. 105 (2d Cir. 1921); *Leahey v. Federal Exp. Corp., supra*; *Von Heyne v. Tompkins*, 89 Minn. 77, 93 N.W. 901 (1903). We are cognizant, however, that at least two federal courts, in dealing with suits for discriminatory terminations, have indicated that some recovery for the postdischarge period may be appropriate. Those courts indicated that even if the after-acquired evidence would justify termination, the employee may still recover backpay for the period between the actual discharge and the time the employer discovered the misconduct. *Wallace, supra*; *Smith v. General Scanning, Inc., supra*. We choose not to adopt that rule; while these deci-

sions present persuasive reasoning on the relevancy of posttermination evidence, we find them distinguishable regarding the amount of the employee's recovery.

In those federal cases permitting prediscovery backpay, the rationale for allowing recovery appears to be that the employer should not be excused from its discrimination; i.e., the employer's liability should not depend on whether the employee also engaged in misconduct. See, *Wallace, supra*; *Smith v. General Scanning, Inc., supra*. That situation is vastly different from the simple breach of contract action now before us.

The aforementioned federal cases dealt with actions based on statutes which specifically prohibit discrimination. See, *Wallace, supra* (ruling on claims under 42 U.S.C. § 2000e (1988) and the federal Equal Pay Act of 1963, 29 U.S.C. §§ 206 and 215 (1988)); *Smith v. General Scanning, Inc., supra* (ruling on a claim under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 through 634 (1988)). The liability associated with the employer's misconduct thus arises independently of the contract or any activity by the employee.

Breach of a contract does not give rise to the same concerns or demand the same protections as does an action based on discrimination. Even more important, however, is the fact that in the present case Benchmark's liability is predicated solely on the contract. Assuming for the moment that the sexual harassment allegations are true, Schuessler should not be able to recover damages.

Sexual harassment clearly constitutes good cause for discharge. See *Stiles*, 231 Neb. at 865, 438 N.W.2d at 496 (stating " 'good cause' for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice"). Thus, when an employer learns that an employee has sexually harassed a coworker, the employer may, employing good cause, discharge the offending employee without liability. Cf. *id*. This being the case, it would be absurd to hold that the employee may recover if his wrongdoing is *covert*. If an employer proves, through posttermination evidence, that the employee engaged in

pretermination misconduct that would have resulted in the justified termination of the employee, the employee may not recover wrongful discharge damages.

We thus remand this issue to the district court for proceedings consistent with the aforementioned rules. On remand, the court must first determine whether the alleged misconduct actually occurred. If so, the court should then determine whether Schuessler's activity would justify his termination. If both inquiries generate affirmative responses, Schuessler will not be entitled to damages for the period following his termination. However, if the court answers one of the questions in the negative, Schuessler will be entitled to recovery. Because the trial court's damages award might still apply, we proceed to Benchmark's final assignment of error, that Schuessler's original damages award was excessive.

The district court awarded Schuessler damages of $167,089.93, attorney fees of $1,406.82, and costs. The court based its award on this language of the employment contract: "Schuessler . . . will receive a salary of $2,000.00 per week . . . . In addition, Schuessler will receive a bonus of thirty-five percent (35%) of net profits of Benchmark." Although Benchmark does not dispute the court's computation of salary damages, it contends that the court erred by awarding Schuessler damages based on a bonus of $96,089.93. We disagree.

Benchmark first argues that Schuessler was entitled to no bonus because, in 1989, Benchmark had a net loss of $19,157. At trial, Schuessler presented income statements indicating Benchmark's net income from March 31 to October 31, 1989. Having no such income statements for November and December, Schuessler's bonus computation did not cover those final 2 months.

To rebut Schuessler's showing, Benchmark then introduced a federal tax return filed for 1989. The return represented a consolidated return for Benchmark and another corporation. The return indicated ordinary income of $3,321. On the bottom of the return was handwritten: "Income includes $22,478 interest income from sale of former business. Therefore, operations *lost* $19,157 for 1989."

The district court awarded Schuessler damages for loss of a bonus, basing the damages only on the period from April through October 1989. The court specifically noted that "no evidence was offered for the profit or loss of [Benchmark] for the months of November and December."

In a bench trial, the judge acts as the trier of fact. See *Union Ins. Co. v. Bailey*, 234 Neb. 257, 450 N.W.2d 661 (1990). We have consistently held that on appeal, the fact finder's determination of damages is given great deference:

> In awarding damages, the fact finder is not required to accept a party's evidence of damages at face value, even though that evidence is not contradicted by evidence adduced by the party against whom the judgment is to be entered. . . . The amount of damages to be awarded is one solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved.

*Union Ins. Co.*, 234 Neb. at 263, 450 N.W.2d at 665-66. See, also, *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990); *Schweitz v. Robatham*, 194 Neb. 668, 234 N.W.2d 834 (1975).

Based on the record, we cannot say that the district court erred in its computation of damages. Nor can we say that the court erred when it determined that the tax return provided no evidence of *Benchmark's* profits or losses during November and December. Sufficient evidence was offered, however, to support a damages award for the period from April to October 1989.

Benchmark raises two final arguments regarding damages. First it argues that the district court failed to take into account a bonus that Schuessler was paid upon his discharge. We note that Benchmark's only evidence that this payment actually occurred was a statement by Haggart. Furthermore, the district court calculated Schuessler's bonus only for the period *following* March 31. The income statements indicate that prior to that date, Benchmark had accumulated enough income to warrant a bonus payment at least as large as the one Schuessler allegedly received. Other evidence indicates that Schuessler had received no bonus for the period preceding his termination. There is no

clear error in the court's refusal to account for the alleged payment.

Benchmark finally argues that the district court erred when it determined that Schuessler had made reasonable efforts to mitigate damages. Benchmark bore the burden of showing that Schuessler, in the exercise of reasonable diligence, could have obtained other employment. See *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). The record adequately supports the district court's finding regarding Schuessler's efforts. We cannot say that the court erred in its determination, and we thus dispose of Benchmark's final argument.

We affirm the district court's denial of Benchmark's motion to stay the proceeding. We also affirm the court's determinations that Benchmark's first three grounds for terminating Schuessler did not constitute good cause. We reverse the court's determination that posttermination evidence of employee misconduct does not affect the employee's recovery, and remand for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.