NEIL KOSTER, APPELLEE, v. P & P ENTERPRISES, INC., FORMERLY KNOWN AS KEARNEY AG CENTER, INC., APPELLANT.
NEIL KOSTER, APPELLEE, v. P & P ENTERPRISES, INC., FORMERLY KNOWN AS KEARNEY AG CENTER, INC., ET AL., APPELLANTS.
539 N.W.2d 274

Filed November 3, 1995. Nos. S–94–071, S–94–072.

Jeffrey H. Jacobsen and Timothy M. Welsh, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellants.

Roger G. Steele, of Luebs, Leininger, Smith, Busick & Johnson, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

These are appeals from jury verdicts in favor of the plaintiff–appellee, Neil Koster, on claims of wrongful termination and conspiracy to tortiously interfere with a business relationship. Koster brought two actions in the district court. These actions were consolidated for jury trial and on appeal. The first action was against defendant–appellant P & P Enterprises, Inc., formerly known as Kearney Ag Center, Inc. (Kearney Ag). Koster based this action on a claim of wrongful termination of an employment agreement he had with Kearney Ag. Koster's second action included two additional defendants–appellants, John Payne and Richard Poston. Payne and Poston were shareholders, directors, and officers of Kearney Ag. Koster's second action was based on a claim of conspiracy by Payne, Poston, and Kearney Ag to tortiously interfere with the performance of his employment agreement. Kearney Ag counterclaimed for alleged unearned commissions that Koster had collected. The jury found for Koster on both of his claims. The jury rejected Kearney Ag's counterclaim. Kearney Ag, Payne, and Poston appeal the jury verdicts.

The appellants assign three errors. They contend that (1) the jury verdicts for Koster are not sustained by the evidence and

are contrary to the applicable law, (2) the jury erred in its assessment of the amount of Koster's recovery, and (3) the jury awarded excessive damages to Koster out of passion or prejudice. Since the jury verdicts were not clearly wrong, we affirm.

In August 1989, as a result of a stock sale, Payne, Poston, and Koster each held a one-third interest, or 3,750 shares, in Kearney Ag. Koster had been employed with Kearney Ag since February 1987, and was a 25-percent owner of the company prior to the August 1989 stock sale. Payne, Poston, and Koster were the only members on the board of directors and were the only officers. Payne was president, Koster was vice president, and Poston was secretary-treasurer.

At the same time as the stock sale, Koster entered into a 5-year management contract with Kearney Ag in which he agreed to "faithfully and industriously" perform the duties of manager "to the reasonable satisfaction of the employer." If he failed to comply with the agreement, his position would be terminated and he would be required to forfeit his stock.

In December 1989, Koster and Poston began to disagree on certain business transactions concerning Kearney Ag. Specifically, Koster alleged that Poston entered business transactions with Poston's friends without first consulting Koster. Koster strongly opposed Poston's suggestions to trade Kearney Ag inventory for land in South Dakota and to lease trucks from a local dealership. Also, Koster purchased a piece of equipment in Nebraska which Poston wanted to purchase in California. These incidents created tension between Koster and Poston.

Kearney Ag began experiencing cash flow problems. In July 1990, to remedy the cash flow situation, the three shareholders each loaned Kearney Ag $25,000 in exchange for promissory notes. At the time Koster brought his actions, the note had an unpaid balance of $5,345.01.

During the summer of 1990, an investor from South Dakota was interested in buying 15 acres of land in Kearney owned by Kearney Ag for $150,000. The buyer was using a local Realtor, Norris Olson, to negotiate the purchase. Koster inquired of Olson as to who was interested in purchasing the land. Olson

refused to provide any information because Payne instructed Olson not to discuss any terms of the transaction with Koster. Koster still retained his one-third interest in Kearney Ag at the time he inquired about the land sale. Subsequent to Koster's termination, the land owned by Kearney Ag was purchased by Payne and Poston in their individual capacity for $70,000.

In September 1990, the board of directors passed a resolution that required Koster to attempt to seek the approval of Payne or Poston before entering transactions that were greater than $20,000. If Payne and Poston were not available for approval, Koster was to use his best judgment in whether to go forward with the transaction.

On November 15, Koster's employment as manager was terminated by Payne. He was also removed from the board of directors and lost his position as vice president. As a result of his termination, Koster was also required to forfeit his stock in Kearney Ag. Poston took over as manager after Koster's termination.

The parties presented conflicting evidence as to why Koster was terminated. Payne and Poston testified that Koster was fired for failing to comply with his employment agreement and the board resolution. Specifically, Payne and Poston testified that Koster entered into business transactions in amounts greater than $20,000 without Payne's or Poston's approval. Koster presented evidence showing that he did not violate the employment agreement and resolution. Specifically, he testified that he sought approval of one transaction and that the other transactions were not completed until after his termination.

About 2 weeks after Koster's termination, Payne and Poston were offered $23 per share to sell the company. However, the sale was never completed. Instead, Payne and Poston sold their interest in Kearney Ag in July 1991. The appellants presented evidence from a certified public accountant that as of November 30, 1990, Kearney Ag had a value of only $33,917, or just over $3 per share.

Koster sought damages for loss of salary, commissions not paid, insurance benefits, value of his forfeited stock, and the balance due on his loan to Kearney Ag. Kearney Ag alleged that the termination was for good cause and counterclaimed for

alleged unearned commissions that Koster had collected.

The jury found for Koster and awarded him damages on all of his claims. In the conspiracy lawsuit, the jury awarded Koster $86,250, or $23 per share, for his stock and $6,895.06 for the underpayment on his loan to Kearney Ag. In the wrongful termination lawsuit, the jury awarded Koster $26,112.63 for loss of salary, $3,893.50 for commissions not paid, and $2,748.24 for insurance benefits. Total damages awarded to Koster amounted to $125,899.43.

Regarding the standard of review in this case, a jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993); *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993). Also, when reviewing a jury verdict, the appellate court considers the evidence and resolves evidential conflicts in favor of the successful party. *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). Concerning the amount of recovery awarded by a jury, we have held:

> A jury verdict will not be disturbed on appeal unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law.

*McDonald v. Miller*, 246 Neb. 144, 145–46, 518 N.W.2d 80, 82–83 (1994).

The appellants first contend that the jury verdicts were not sustained by the evidence or the applicable law. The jury found that Kearney Ag wrongfully terminated Koster and that the appellants conspired to tortiously interfere with Koster's employment agreement. In proving wrongful termination under an employment agreement, the employee must prove the terms of the contract, his compliance with the terms until discharge, the employers' breach, and damages. *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). The burden then shifts to the employer to prove that good cause existed for discharge of the employee. *Id.* However, the ultimate

burden of proving wrongful termination remains with the employee. *Id.* " " "[G]ood cause" for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice.' " *Brockley v. Lozier Corp.*, 241 Neb. 449, 457, 488 N.W.2d 556, 562 (1992) (quoting *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989)).

The terms of Koster's employment agreement were set forth in Koster's employment contract and the resolution adopted by the board of directors in September 1990. Koster presented evidence that he complied with the terms of the contract. Koster presented evidence showing that the transactions in issue were either not completed by Koster or were only completed after he sought approval as required by the resolution. He testified that he was unable to reach Payne and Poston and that he pursued the transactions in his best judgment as permitted by the agreement. Koster's termination resulted in Kearney Ag's breach of the employment contract. Kearney Ag attempted to prove that Koster's termination was for good cause by presenting evidence asserting Koster failed to comply with his employment agreement. This evidence was submitted to the jury, and the jury found in favor of Koster. The jury verdict finding Kearney Ag wrongfully terminated Koster's employment was not clearly wrong based on the evidence presented. Therefore, we uphold the judgment.

In proving conspiracy to tortiously interfere with a business relationship, a claim of civil conspiracy is not actionable in itself, but serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy. *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994). The elements of tortious interference with a business relationship or expectation are

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 555, 529 N.W.2d 33, 39 (1995) (citing *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991)).

The appellants concede to the first two elements of tortious interference with a business relationship. By wrongfully terminating Koster, the appellants were acting in an unjustified and intentional manner. The interference with Koster's employment caused him financial damage. Therefore, the elements of tortious interference with a business relationship were satisfied.

"A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *Wiekhorst Bros. Excav. & Equip.*, 247 Neb. at 555, 529 N.W.2d at 39. Concerning a corporation and its agents, "[a] corporation cannot conspire with an agent when the agent is acting within the scope of his or her authority." *Id.* at 556, 529 N.W.2d at 40. Accord *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536 (1989). A corporate official can conspire with the corporation only if he is acting in his individual capacity. *Id.* In order to claim conspiracy, a plaintiff must plead in the petition that the corporate officials were acting outside the scope of their authority or other than in the normal course of their duties. *Id.* A civil "conspiracy need not be established by direct evidence of the acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished." *Davidson v. Simmons*, 203 Neb. 804, 808, 280 N.W.2d 645, 648 (1979).

Koster's second amended petition in the conspiracy action alleged that Payne and Poston acted outside the scope of their authority. Koster presented evidence that Payne and Poston wrongfully terminated Koster in order to pursue transactions without Koster's interference. Payne and Poston purchased land from Kearney Ag for $70,000. A buyer had previously expressed an interest in buying this land for $150,000. Poston often attempted to pursue business transactions which were considered part of Koster's duties as manager. Poston became manager after Koster's termination. Also, Payne and Poston

were negotiating the sale of their shares for $23 per share within 2 weeks of Koster's termination.

Payne and Poston presented evidence that they were merely acting in the best interests of the corporation and in the scope of their employment when terminating Koster. The jury considered the contradicting evidence and concluded that the appellants conspired to tortiously interfere with Koster's employment agreement. When viewing the conflicting evidence in favor of Koster, the jury's finding that the appellants conspired to tortiously interfere with Koster's contract is not clearly wrong and therefore will not be disturbed on appeal.

The appellants' second and third assignments of error contend that the jury erred in its assessment of Koster's damages and that these damages awarded were excessive. As previously stated, this court will not disturb a jury's verdict unless it appears that it was the "result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law." *McDonald v. Miller*, 246 Neb. 144, 145–46, 518 N.W.2d 80, 82–83 (1994).

The appellants' main contention is that the amount awarded for the value of Koster's forfeited Kearney Ag stock was clearly excessive. In a special verdict form, the jury gave specific amounts for each of Koster's claims for damages. The jury awarded Koster $23 per share for his forfeited stock. The evidence showed that Payne and Poston were offered $23 per share for their stock in Kearney Ag within 2 weeks of Koster's termination. It was apparent from the record how the jury determined Koster's stock value at $23 per share.

The appellants also contend that the damages for the unpaid balance of the promissory note, the unearned commissions, and the lost retirement funds were excessive. However, the evidence presented at trial also supported the jury's awards as to these claims. Therefore, the jury's award of damages will not be disturbed.

In conclusion, the jury verdicts were not clearly against the weight and reasonableness of the evidence. Therefore, we affirm.

AFFIRMED.