ELI'S, INC., A NEBRASKA CORPORATION, APPELLEE, V. COMMERCIAL LITHOGRAPHING, INC., A NEBRASKA CORPORATION, APPELLEE, AND COMMERCIAL PRINTING CO., A NEBRASKA CORPORATION, INTERVENOR-APPELLANT.

601 N.W. 2d 795

Filed October 19, 1999.   No. A-98-1015.

Frederick S. Cassman, of Abrahams, Kaslow & Cassman, for appellant.

Donald L. Swanson and Joseph M. Colaiano for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Commercial Printing Co. (Commercial Printing) appeals from an order of the district court which sustained an objection by Eli's, Inc. (Eli's), to Commercial Printing's intervening claim in this execution proceeding. On appeal, Commercial Printing

asserts that the district court erred in denying Commercial Printing's request for a jury trial, in finding that Commercial Printing did not have a valid claim to the property being executed upon, and in overruling a motion for new trial. For the reasons stated herein, we affirm.

## II. BACKGROUND

In 1994, Commercial Printing and the principals of Eli's joined to form a new company, known as Commercial Lithographing, Inc. (Commercial Lithographing). (We note that at some relevant times during the events leading up to this case, Commercial Printing was known as Commercial Lithographing Co. For clarity, we will refer to the company as "Commercial Printing" throughout. Additionally, we will refer to the principals of Eli's as "Eli's.") The management agreement between the parties provided for Commercial Printing to be in charge of the day-to-day operations of Commercial Lithographing. The parties agreed to share any profits or losses experienced by Commercial Lithographing.

Commercial Lithographing struggled financially from the inception of the company. Commercial Lithographing incurred debts to both Commercial Printing and Eli's. In 1995, representatives of Commercial Printing and Eli's met to discuss selling the equipment of Commercial Lithographing. On September 17, 1996, Eli's filed a petition in the district court seeking a judgment against Commercial Lithographing for outstanding debt owed to Eli's. On January 30, 1997, the court awarded Eli's summary judgment in the amount of $36,888.96.

On April 14, 1997, Eli's filed a praecipe for the sheriff to execute the January 30 judgment against Commercial Lithographing's remaining assets, including but not limited to a paper cutter. On May 6, Commercial Printing filed an amended notice of an intervening claim. Commercial Printing alleged ownership of the cutter, pursuant to a bill of sale dated December 11, 1996, in the amount of $8,000.

On May 12, 1997, Eli's filed an objection to Commercial Printing's intervening claim. Eli's alleged that the transfer of the cutter was a fraudulent transfer and that reasonably equivalent value was not paid for the cutter. On July 31, 1998, the court

entered an order finding that Eli's execution against the property, including the cutter, should proceed. The court found that Commercial Printing's acquisition of the cutter bore numerous "badges of fraud": the transfer occurred while Commercial Lithographing was insolvent and Commercial Printing was aware of the insolvency. Additionally, the court found that Commercial Printing was not a good faith transferee.

On August 5, 1998, Commercial Printing filed a motion for new trial. The court's journal entries indicate that the motion was overruled on September 3. Commercial Printing filed this timely appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, Commercial Printing has assigned four errors, which we consolidate for discussion to three. First, Commercial Printing alleges that the district court erred in denying Commercial Printing's request for a jury trial. Second, Commercial Printing asserts that the district court erred in sustaining Eli's objection to the intervening claim. Third, Commercial Printing asserts that the district court erred in overruling the motion for new trial.

### IV. ANALYSIS

#### 1. JURY TRIAL

Commercial Printing first asserts that the district court committed reversible error by denying Commercial Printing's request for a jury trial and in conducting a bench trial on the merits of the intervening claim. Commercial Printing specifically requested a jury trial in a pleading captioned "Intervening Claimant's Response to Plaintiff's Objection" filed on June 27, 1997, as well as orally before the court on July 2. The court denied the request, and the case proceeded as a bench trial on the merits.

Commercial Printing's claim of entitlement to a jury trial in this case is premised upon Neb. Rev. Stat. § 25-1523 (Reissue 1995). Neb. Rev. Stat. §§ 25-1521 through 25-1523 (Reissue 1995) govern the procedure to be followed when an intervening claimant makes a claim of ownership on property being levied upon pursuant to a judgment. Section 25-1521 provides that "the

court" is to make the relevant findings as to ownership and enter judgment accordingly. Section 25-1523, however, provides for a procedure to be followed "[i]f the jury" finds the intervening claimant's claim of ownership to be valid. Commercial Printing alleges that this provision indicates that there is a right to a jury trial in matters such as the present case. We disagree.

Our research of §§ 25-1521 through 25-1523 indicates that prior to 1973, all three sections specifically provided for a jury to be impaneled and for the jury to make the relevant determinations as to the intervening claimant's claim of ownership. In 1973, however, §§ 25-1521 and 25-1522 were specifically amended to remove all language concerning the jury and substitute language providing that "the court" make the relevant findings. Inexplicably, § 25-1523 was not amended.

Our review of the sections at issue indicates that §§ 25-1521 and 25-1522 provide the procedure to be followed when conducting the trial on the merits of the intervening claimant's claim of ownership. Section 25-1523 provides a procedure that can be followed by the executing plaintiff if the intervening claimant is successful. We think the longstanding principle of statutory construction that a specific statute takes precedence over a general statute because the specific statute is a specific expression of legislative will concerning the subject is applicable in the present case. *State v. Barnett*, 1 Neb. App. 708, 511 N.W.2d 150 (1993). See *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991). Accordingly, because §§ 25-1521 and 25-1522 specifically govern the procedure to be followed *at* the trial on the merits of the intervening claimant's claim and § 25-1523 only provides for procedures to be followed *after* the trial, we defer to intent expressed in §§ 25-1521 and 25-1522. We conclude the trial court did not err in denying Commercial Printing's request for a jury. This assigned error is without merit.

## 2. ELI'S OBJECTION

Commercial Printing assigns as error the court's sustaining of Eli's objection to Commercial Printing's intervening claim. Specifically, Commercial Printing assigns that the court erred in finding a fraudulent transfer and in finding that Commercial

Printing was not a good faith transferee. Essentially, Commercial Printing challenges both of these findings by the court on the basis of Commercial Printing's allegation that it paid Commercial Lithographing a "reasonably equivalent value" for the cutter.

We first feel it necessary to discuss the context in which we review this case. Although Eli's objection alleged that the transfer of the cutter was fraudulent pursuant to the provisions of the Uniform Fraudulent Transfer Act (Act), Neb. Rev. Stat. § 36-701 et seq. (Reissue 1998), we do not review the case as a case under the Act. Rather, we review the case pursuant to §§ 25-1521 and 25-1522 to determine whether the district court committed error in finding that the intervening claimant did not have a legitimate right to the cutter. In that context, we do, however, consider the "badges of fraud" outlined in the Act, as the trial court used those considerations in reaching its determination.

Section 36-705 outlines several factors to be considered in determining whether a transfer was fraudulent. Among those factors listed in § 36-705(b) are the following, all of which the court found to be relevant to the present case:

(1) the transfer . . . was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer . . . was . . . concealed;

(4) before the transfer was made . . . the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

. . . .

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . .

(9) the debtor was insolvent or became insolvent shortly after the transfer was made . . . .

Section 36-709 provides that a transfer is not voidable as fraudulent if the debtor receives reasonably equivalent value for the asset being transferred. As such, Commercial Printing argues that the $8,000 paid to Commercial Lithographing was

reasonably equivalent to the fair market value of the cutter and that, accordingly, the transfer should not be held to be fraudulent.

The record in the present case reveals that, at all relevant times, Commercial Printing handled the daily operations and management of Commercial Lithographing's business. There is evidence that even after the transfer of the cutter occurred, the actual machine did not move to any different location than where it was prior to the transfer. Despite the pendency of a suit by Eli's to get a judgment against Commercial Lithographing, Commercial Printing and Commercial Lithographing did not disclose the transfer until Eli's attempted to execute on the judgment several months later. The evidence indicates that the cutter was the only tangible asset left belonging to Commercial Lithographing and that Commercial Lithographing was insolvent at the time of the transfer. Finally, there was disputed evidence concerning the value of the cutter, but there was evidence from which the value could be set as much as three times higher than what Commercial Printing paid for it.

When reviewing factual determinations of a trial court in a bench trial, an appellate court presumes that the trial court decided the controverted facts in favor of the successful party, and those factual findings will not be disturbed on appeal unless clearly erroneous. See, *Struve Enter. v. Travelers Ins. Co.*, 243 Neb. 516, 500 N.W.2d 580 (1993); *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). We do not find the court's conclusions to be clearly erroneous in the present case. This assigned error is without merit.

### 3. MOTION FOR NEW TRIAL

Commercial Printing also alleges the court erred in overruling the motion for new trial. Commercial Printing does not assert as a basis for new trial any objections other than those previously discussed herein. In light of our conclusions above, we need not discuss this assigned error further.

### V. CONCLUSION

Finding no reversible error, we affirm the district court's order.

AFFIRMED.