MICHAEL D. BARKS, APPELLEE AND CROSS–APPELLANT, V. COSGRIFF COMPANY, A NEBRASKA CORPORATION, APPELLANT AND CROSS–APPELLEE.

529 N.W.2d 749

Filed March 31, 1995.   No.˙S–93–397.

Michael L. Lazer and Lisa A. Sarver, of Dwyer, Pohren, Wood, Heavey, Grimm, Goodall & Lazer, for appellant.

Robert R. Otte, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Michael D. Barks sued Cosgriff Company (Cosgriff) for wrongful termination. Cosgriff filed a counterclaim for breach of contract. Prior to trial, the Douglas County District Court sustained Barks' demurrer to Cosgriff's counterclaim. A jury rendered a verdict in Barks' favor on the wrongful termination claim. Cosgriff appeals the jury's verdict and the district court's order sustaining Barks' demurrer. On cross-appeal, Barks

requests an award of attorney fees. We reverse the jury's verdict on Barks' wrongful termination claim because the district court improperly instructed the jury with regard to that claim. We dismiss for lack of jurisdiction that part of Cosgriff's appeal which is related to the district court's decision to sustain Barks' demurrer to Cosgriff's counterclaim.

## I. FACTUAL BACKGROUND

Cosgriff is a Nebraska corporation which specializes in organizing and supervising charitable fundraising campaigns throughout the country. Pursuant to an oral agreement, Cosgriff hired Barks on September 5, 1990. Barks received a letter dated September 6 from Cosgriff setting forth certain terms and conditions of his employment. The letter read:

Dear Mike:

We are pleased to welcome you as an Associate of the Cosgriff Company.

The beginning date of your employment will be September 5, 1990.

We ask that you provide the firm with your exclusive full-time services, adhere to company policies and promptly report to and give your best efforts to duties assigned by the president.

Your beginning salary will be at the guaranteed rate of $40,000 per year. Our schedule of payment is base pay, plus assignment pay. The base pay will be $200 per week, plus $670 per week assignment pay — for a total of $870 per week when you are on assignment. We project assignment pay for 45 weeks during the year. Again, you are guaranteed $40,000 for the first year.

. . . .

We are indeed pleased that you and your family have joined our firm, and fully expect this will be a rewarding and enjoyable career for you and the family.

Cordially yours,
/s/ Bob
Robert P. Cosgriff
President

In his deposition and at trial during cross-examination, Barks

testified that the above–referenced letter accurately and completely set forth the terms of his employment agreement with Cosgriff. However, on redirect examination conducted the day after his cross–examination, Barks recanted that testimony and stated that Robert Cosgriff, the president of Cosgriff, told Barks that his employment contract would be for a 1–year term.

After approximately a week of training at Cosgriff's Omaha office, Barks was assigned work as an onsite resident staff director for Cosgriff in Norfolk, where Cosgriff was organizing a two–phase capital fundraising campaign for the TEACH/Sacred Heart Church project. Though Barks had approximately 7 years' experience in fundraising through the United Way and various educational institutions, he had never conducted the type of capital fundraising campaign required by the TEACH project.

Upon completion of phase I of the TEACH campaign, Barks returned to the main office in Omaha. The record reflects that members of the TEACH campaign staff had been dissatisfied with Barks' performance. As indicated by the record, the problems with Barks' performance seemed to stem from two sources: Barks' own inability to handle the TEACH campaign assignment and the inadequate training provided by Cosgriff.

After the disappointing performance in Norfolk, Robert Cosgriff informed Barks that he was being considered for a less challenging feasibility study taking place in Minnesota. Robert Cosgriff testified that Barks seemed reluctant to take the Minnesota assignment because he did not want to be that far away from his family. Barks testified that he showed no such hesitation and that he began immediate preparation for the Minnesota assignment. During this time period, the TEACH campaign in Norfolk canceled the remainder of its contract with Cosgriff because of its dissatisfaction with the success of phase I of the campaign.

On approximately November 23, 1990, Cosgriff terminated Barks' employment. Barks filed the instant lawsuit on January 10, 1991, alleging wrongful termination. Cosgriff counterclaimed, alleging that Barks had breached his employment contract, and requested as damages the wages and expenses paid to Barks, as well as lost fees stemming from the

cancellation of the balance of the TEACH campaign contract. The district court sustained Barks' demurrer to Cosgriff's counterclaim. A jury returned a verdict in Barks' favor on the wrongful termination claim and awarded Barks $20,000 in damages. This appeal followed.

## II. ASSIGNMENTS OF ERROR

Cosgriff contends that the trial court erred in (1) admitting Barks' testimony of alleged oral representations regarding his employment contract, (2) failing to grant Cosgriff's motions for directed verdict, (3) improperly instructing the jury regarding the parties' respective burdens of proof, (4) failing to grant Cosgriff's motion for judgment notwithstanding the verdict, (5) failing to grant Cosgriff's motion for new trial, (6) sustaining Barks' demurrer to Cosgriff's counterclaim, (7) dismissing the counterclaim without affording Cosgriff an opportunity to amend its pleadings, and (8) granting Barks' motion in limine to exclude evidence regarding Cosgriff's lost fees and wages and expenses paid to Barks.

On cross-appeal, Barks alleges that the trial court erred in not awarding Barks attorney fees.

## III. STANDARD OF REVIEW

A jury verdict will not be disturbed on appeal as excessive unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994); *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994); *Sanwick v. Jenson*, 244 Neb. 607, 508 N.W.2d 267 (1993).

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994).

## IV. ANALYSIS

### 1. BARKS' WRONGFUL TERMINATION ACTION

#### (a) Evidence of Oral Contract

Cosgriff argues that the trial court erred when it allowed Barks to testify regarding alleged oral statements made by Robert Cosgriff which indicated that Barks' employment contract with Cosgriff was for the definite term of 1 year. Cosgriff contends that the alleged oral representations should have been excluded pursuant to the parol evidence rule. Furthermore, Cosgriff argues that since Barks testified both in his deposition and on cross–examination at trial that the September 6 letter from Robert Cosgriff completely and accurately reflected the entire agreement between the parties, Barks should not have been allowed to change his testimony on redirect examination the day after his cross–examination.

We refuse to reach the merits of Cosgriff's first assignment of error. Cosgriff failed to object when Barks testified that Robert Cosgriff told Barks that his contract was for 1 year. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Nichols v. Busse,* 243 Neb. 811, 503 N.W.2d 173 (1993). If, when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction, or fails to object or to insist upon ruling on the objection to introduction of such evidence, and otherwise fails to raise the question as to its admissibility, that party is considered to have waived whatever objection he or she may have had thereto, and the evidence is in the record for consideration the same as other evidence. *Lincoln Branch, Inc. v. City of Lincoln,* 245 Neb. 272, 512 N.W.2d 379 (1994); *In re Application of Jantzen,* 245 Neb. 81, 511 N.W.2d 504 (1994). Since Cosgriff failed to object to Barks' testimony regarding the alleged representations made by Robert Cosgriff, the testimony was properly before the jury for consideration.

#### (b) Jury Instruction

Cosgriff contends that the trial court improperly instructed the jury regarding Barks' cause of action for wrongful termination. Specifically, Cosgriff argues that the trial court's

jury instructions failed to inform the jury that if they found Barks to be an at-will employee, Cosgriff did not need a justification to terminate him. Cosgriff also alleges that the challenged jury instruction improperly shifted the burden of proof onto Cosgriff if Barks proved his prima facie case for wrongful termination.

Cosgriff failed to object to any of the jury instructions prior to their submission to the jury. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993); *Paro v. Farm & Ranch Fertilizer*, 243 Neb. 390, 499 N.W.2d 535 (1993). However, we find that the trial court's decision to administer the jury instruction in question constituted plain error. Therefore, we will reach the merits of this assignment of error.

In *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993), this court set forth the rules regarding burden of proof in wrongful termination and breach of employment contract cases. In *Schuessler*, we stated that the employee must initially prove the existence of the employment contract, its terms and his or her compliance with those terms until termination, the employer's breach, and damages. After the employee has done so, the burden then shifts to the employer to come forward with evidence that good cause existed for discharging the employee. If the employer produces sufficient evidence, the employee may rebut, and if in controversy, the issue goes to the trier of fact; however, the ultimate burden of proving wrongful termination remains with the employee.

The *Schuessler* decision clarified, but did not overrule, the opinion in *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 865, 438 N.W.2d 494, 496 (1989), wherein this court stated:

> In an action for breach of a contract of employment, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. . . . The burden then shift[s] to [the employer] to prove good cause indeed existed for [the

employee's] discharge. . . . [A]n employee may attack an employer's offered explanation as pretextual.

The *Schuessler* decision was released 2 months after the trial in the case at bar. Thus, the trial court in the instant case had only the *Stiles* decision to look to as authority for drafting the challenged jury instruction. The *Schuessler* court was concerned that the language used in *Stiles* might be perceived as improvidently assigning too great a burden to both parties in an employment contract action. The trial court in the instant case appears to have fallen victim to that misperception. Jury instruction No. 2, as administered by the trial court, misstated the law.

### (i) Elements of Barks' Claim

First, in part I.B of the instruction, the trial court omitted one of the elements of the employee's prima facie claim. The trial court instructed the jury that before Barks could succeed on his wrongful termination claim, Barks had to prove (1) that Barks and Cosgriff entered into a contract of employment for a term of 1 year, (2) the terms of the contract, (3) that Cosgriff wrongfully breached the contract by terminating Barks' employment, (4) that Cosgriff's breach proximately caused Barks' damages, and (5) the nature and extent of the damages. *Schuessler*, however, dictates that an additional element must be satisfied: Barks must prove that he complied with the terms of his contract until his discharge.

### (ii) Effect of Finding Barks Was an At-Will Employee

Part II.A of jury instruction No. 2 also requires clarification. Part II.A read:

Defendant claims that the contract was not for a definite term and that the Defendant employed the Plaintiff at-will and could terminate the Plaintiff without liability.

The Defendant claims that if you find that the Defendant employed the Plaintiff for a specific term the Plaintiff wholly failed to perform his services for Cosgriff Company in a professional manner . . . and was terminated for good cause.

The Defendant also states that the Defendant performed all of its obligations toward Plaintiff as an employer, but

that the Plaintiff fully failed and refused to perform his employment obligations in a professional, prompt and satisfactory manner and the Plaintiff is therefore estopped from making claim on the employment contract.

The problem with the quoted language from the trial court's jury instruction is that the trial court failed to advise the jury that if they found Barks to be an at-will employee, Barks' wrongful termination claim must fail because Cosgriff would not have needed a reason to terminate Barks. In essence, the trial court's jury instructions ignored the effect of the jury's potential determination that Barks was an at-will employee. The jury could not be expected to know the legal ramifications of a determination that Barks was an at-will employee without some legal instruction from the trial court on that point. Thus, the jury instructions failed to completely and accurately state the law regarding at-will employment.

### (iii) Burden of Proof

The final defect in the trial court's jury instructions is found in part II.B of jury instruction No. 2, which read: "In order for the Defendant to justify the termination of the Plaintiff, the Defendant must prove by the greater weight of the evidence that the Plaintiff was terminated for good cause."

Part II.B of jury instruction No. 2 improperly shifted the burden of proof to Cosgriff. Read in the context of the entire jury instruction, part II.B told the jury that if Barks established a prima facie case for breach of employment contract, then the burden of proof shifted to Cosgriff to prove good cause for termination by a preponderance of the evidence. The instruction misstated the law. Under *Schuessler*, the burden of proof does not shift to the employer. Rather, the burden of *production* is shifted to the employer. In other words, the employer need merely produce credible evidence of good cause for termination after the employee establishes his or her prima facie case. The burden of proof remains with the plaintiff employee throughout. Once the employer meets its burden of production, the employee may offer evidence to rebut the employer's factual contentions. If, at the close of all the evidence, there is a factual dispute, the question goes to the jury. Thus, the plaintiff always has the

burden of proof as to all the elements in a wrongful termination action. The employer does not have the burden of proof as to any factual issue.

Consistent with the foregoing analysis, we hold that the trial court in the instant case improperly instructed the jury regarding the burdens of proof for the respective parties. A jury instruction that misstates the burden of proof has a tendency to mislead the jury and is erroneous. See *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976). Since jury instruction No. 2 misstated the law to the prejudice of Cosgriff, we must reverse the decision and remand the cause to the district court for a new trial.

### *(iv) Effect of Erroneous Jury Instruction*

Cosgriff contends that the trial court improperly denied its motion for new trial. A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). We have determined that the trial court improperly instructed the jury regarding Barks' wrongful termination claim, and that error prejudiced Cosgriff. Thus, the trial court erred in not granting Cosgriff's motion for new trial.

### (c) Other Assignments of Error

We have reviewed Cosgriff's other assignments of error regarding the district court's decision to overrule Cosgriff's motions for directed verdict and for judgment notwithstanding the verdict and find no merit in those assignments of error. Additionally, our decision reversing the jury's verdict and remanding the cause for new trial makes it unnecessary for us to address Barks' cross-appeal for attorney fees and the trial court's decision with regard to Barks' motion in limine.

### 2. Cosgriff's Counterclaim

In its answer to Barks' petition in the instant case, Cosgriff included a counterclaim wherein Cosgriff alleged that Barks breached his employment contract by failing to provide his best professional efforts to the duties assigned to him, failing to adhere to company policies, failing to attend scheduled meetings, poorly evaluating prospects, misrepresenting his work

experience, causing cancellation of phase II of the TEACH campaign, refusing to work during his last week with the company, and refusing to take a subsequent assignment after completion of phase I of the TEACH campaign. Cosgriff sought as damages the wages and expenses it paid to Barks, as well as the fees lost when the TEACH campaign canceled the second phase of its contract with Cosgriff.

Barks filed an answer to Cosgriff's counterclaim. Subsequently, on the morning of the trial, Barks filed a demurrer alleging that Cosgriff's counterclaim failed to state facts sufficient to support a cause of action. The trial court sustained Barks' demurrer to Cosgriff's counterclaim. However, the only evidence in the record regarding the trial court's decision to sustain the demurrer is a brief oral exchange which appears in the bill of exceptions just prior to the trial. The record does not contain any written affirmation of the trial court's decision regarding the demurrer. Furthermore, nothing in the record, written or oral, indicates that the trial court ever dismissed Cosgriff's counterclaim after sustaining the demurrer.

As a preliminary matter, we note that Barks improperly attacked Cosgriff's counterclaim by filing a demurrer. It is established law in Nebraska that the proper manner in which to challenge the appropriateness of a counterclaim is by a motion to strike rather than by a demurrer. *The Tilden Bank v. Retzlaff*, 188 Neb. 834, 199 N.W.2d 734 (1972); *Weller v. Putnam*, 184 Neb. 692, 171 N.W.2d 767 (1969). Standing alone, a counterclaim might well state facts sufficient to constitute a cause of action but at the same time not be proper as a counterclaim under Neb. Rev. Stat. §§ 25–812 and 25–813 (Reissue 1989). *Weller v. Putnam, supra.* However, since the parties and the district court treated Barks' demurrer as a demurrer rather than as a motion to strike, we will also treat it a demurrer for the purposes of this appeal.

As we noted above, the district court failed to enter an order of dismissal after sustaining Barks' demurrer to Cosgriff's counterclaim. The sustaining of a general demurrer, not followed by a judgment of dismissal terminating the litigation, does not constitute a reviewable final order. *Cornhusker Agrl. Assn. v. Equitable Gen. Ins. Co.*, 223 Neb. 618, 392 N.W.2d

366 (1986); *Koll v. Stanton–Pilger Drainage Dist.*, 207 Neb. 425, 299 N.W.2d 435 (1980). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. Conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). In the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction. *Id.* Since the district court in the case at bar failed to enter an order dismissing Cosgriff's counterclaim, this court is without jurisdiction to hear Cosgriff's arguments with regard to Barks' demurrer. Thus, that part of Cosgriff's appeal which is related to Barks' demurrer is dismissed for lack of jurisdiction.

## V. CONCLUSION

The jury's verdict on the wrongful discharge claim is reversed, and the cause is remanded to the district court for a new trial because the district court erroneously instructed the jury as to the elements of Barks' wrongful discharge claim, the effect of a finding that Barks was an at–will employee, and the parties' respective burdens of proof. We dismiss for lack of jurisdiction that part of Cosgriff's appeal which is related to the district court's decision to sustain Barks' demurrer to Cosgriff's counterclaim.

APPEAL DISMISSED IN PART, AND IN
PART REVERSED AND REMANDED
FOR A NEW TRIAL.

WHITE, C.J., dissenting.

I agree with the majority's discussion of *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). However, in this circumstance I believe *Schuessler* should not be applied because, in my judgment, the errors complained of were in fact caused by the defendant's counsel in his pleading in which he characterized the asserted matters as affirmative defenses and then failed to object to the instructions. He created error of which he now seeks to take advantage. This should not be permitted.

LANPHIER, J., dissenting.

The majority opinion holds that the jury instructions failed to

completely and accurately state the law regarding a wrongful termination claim. I respectfully dissent. The jury instructions fully advised the jury regarding the law. The instructions also correctly placed the burden of proof on the defendant for what the defendant denominated in his pleadings as affirmative defenses. The majority opinion would put this burden on the plaintiff.

ELEMENTS OF A WRONGFUL TERMINATION ACTION

I depart from the majority's conclusion in section IV(1)(b)(i) that the jury instructions omitted one of the elements of the plaintiff's cause of action for a breach of contract of employment as set out in *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). In *Schuessler*, we attempted to clarify an earlier opinion, *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). In *Schuessler*, we focused on the burden of proof placed on both parties, and we restated the elements of a cause of action for a breach of contract of employment claim. We said, "The employee must initially prove the existence of the contract, its terms and his compliance with them until his discharge, the employer's breach, and damages." 243 Neb. at 436, 500 N.W.2d at 538.

Since an employer may lawfully discharge an at-will employee without cause, a plaintiff in an action for breach of a contract of employment has the burden of proving the existence of a contract and proving its terms. *Smith v. City of Omaha*, 220 Neb. 217, 369 N.W.2d 67 (1985). In *Stiles, supra*, we said that a plaintiff was required to prove the existence of a contract and that the employer breached that contract by firing him or her for other than good cause. See, also, *Overmier v. Parks*, 242 Neb. 458, 495 N.W.2d 620 (1993).

*Schuessler* apparently adds an element to the plaintiff's burden of proof by requiring the plaintiff to prove that he or she complied with the terms of the employment contract as part of the plaintiff's prima facie case. Plaintiffs in other types of breach of contract actions are not required to prove they complied with the terms of the contract in order to prove a prima facie case. Generally, in order to recover on an action for

a breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, and damages. *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993); *K.M.H. v. Lutheran Gen. Hosp.*, 230 Neb. 269, 431 N.W.2d 606 (1988).

In this matter, Cosgriff asserted that if the jury found that an employment contract existed, then Barks was terminated for good cause because he allegedly failed to perform his services for the company in a professional manner, did not give his full efforts to the fundraising campaign, and did not use his best efforts to perform assigned duties. In applying *Schuessler* to Barks, the majority would require him to prove as part of his prima facie case that he complied with the terms of his alleged contract of employment. Therefore, the majority effectively places the initial burden of proving the absence of good cause on Barks. This violates the majority's holding which places the burden of production on the employer to come forward with evidence that good cause existed for discharging the employee.

Our statement of the elements of a cause of action for breach of an employment contract in *Stiles* more accurately states the plaintiff's prima facie case. By requiring the plaintiff to prove the existence of a contract and that the employer breached that contract by firing him or her for other than good cause, we recognize that an employee could be terminated for reasons other than failure to perform the terms of the employment contract. For example, an employee could be terminated for misconduct or because the employer no longer has an economic need for anyone to do the employee's job. See, *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992); *Cleasby v. Leo A. Daly Co.*, 221 Neb. 254, 376 N.W.2d 312 (1985). In both cases, the reasons constitute just cause for breach of the employment contract.

Finally, *Schuessler* was released some 2 months after this matter went to trial. A trial court is required to render a decision which reflects any change in the applicable law which occurred in the interval between the time the judge made rulings of law and the time judgment is pronounced. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994). Although we stated in *Schuessler* that we were attempting to clarify the burden of

proof in breach of employment contract actions, we added an element to the cause of action. I believe the trial court correctly relied on *Stiles* in stating the law in effect at the time it pronounced judgment. It was not error for the trial court not to anticipate a change in the law. Therefore, no error should be predicated on a ruling of this court subsequent to that judgment.

## EFFECT OF FINDING BARKS WAS AN AT-WILL EMPLOYEE

In section IV(1)(b)(ii), the majority concludes that the jury instructions ignored the effect of the jury's potential determination that Barks was an at-will employee. Jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Hamernick v. Essex Dodge Ltd., ante* p. 392, 527 N.W.2d 196 (1995); *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994).

In this case, when the jury instructions are read as a whole, they correctly advised the jury.

Part I.B of jury instruction No. 2 delineated the elements of an employee's prima facie claim for wrongful termination. Part I.B reads:

Before the Plaintiff can recover against the Defendant, the Plaintiff must prove, by the greater weight of the evidence, each and all of the following:

1. That the Plaintiff and Defendant entered into a contract of employment for a term of one year;

2. The terms of the contract;

3. That the Defendant wrongfully breached the contract by terminating Plaintiff;

4. That the breach of contract was the proximate cause of the damage to the Plaintiff; and

5. The nature and extent of that damage.

Part I.B of the jury instruction clearly placed the burden of proof on Barks to prove by the greater weight of the evidence that he and Cosgriff entered into a contract of employment for a term of 1 year. Part I.C advised the jury that if Barks had "not

met this burden of proof, then your verdict must be for the Defendant. On the other hand, if the Plaintiff has met this burden of proof, then you must consider the Defendant's defense that Plaintiff was terminated for cause." Therefore, if the jury determined that Barks failed to prove that there was a contract of employment, the jury was required to hold that Barks'· wrongful termination claim failed. The jury would not have reached the language the majority objects to in part II.A of the instruction.

## BURDEN OF PROOF WAS ON THE DEFENDANT

Finally, in section IV(1)(b)(iii) the majority holds that the burden of proof remains with the employee at all times, although the burden of production shifts to the employer to produce credible evidence of good cause for termination after the employee establishes a prima facie case. However, we have previously held that the burden of proof is on the employer when the breach of contract is asserted as an affirmative defense. *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992). In its answer, Cosgriff asserted as an affirmative defense that Barks had breached his employment contract.

In *Ballard*, a school district terminated the plaintiff from her position as assistant cook due to alleged .work–related misconduct. The parties had entered into a written employment contract which stated that the plaintiff's employment would continue as long as she rendered satisfactory service. The plaintiff's employment was terminated after she called the school principal a "dumb bastard" at the conclusion of a discussion concerning a discipline matter involving her son, a student at the school. The school district asserted that the plaintiff's termination was justified. We said:

> Breach of contract is a contractual party's failure, without legal excuse, to perform a promissory obligation which forms the whole or part of a contract. . . . As an affirmative defense, breach of contract must be pleaded and proved by the party having the burden of proof for the defense.

(Citations omitted.) 241 Neb. at 976, 492 N.W.2d at 858. See,

also, *Nebraska Pub. Emp. v. City of Omaha*, 244 Neb. 328, 506 N.W.2d 686 (1993).

Under Ballard's contract with the school district, her employment could validly be terminated if she failed to render satisfactory service as a cook. The school district failed to adduce any evidence indicating that Ballard had not provided satisfactory service as a cook; rather, the evidence indicated her termination was based solely on a comment she made during a parent–principal conference. Accordingly, the school district's affirmative defense failed.

In *Cleasby v. Leo A. Daly Co.*, 221 Neb. 254, 376 N.W.2d 312 (1985), the plaintiff brought suit for a breach of a contract for personal services. The defendant asserted business necessity as an affirmative defense justifying its breach of the contract. In *Cleasby*, the burden of proof was upon the defendant employer.

In this matter, Cosgriff asserted as an affirmative defense Barks' alleged failure to perform under the employment contract. As it was an affirmative defense, the burden of proof was properly on the defendant. Ordinarily, this court disposes of a case on appeal on the theory on which it was presented in the trial court. *Peterson v. Don Peterson & Assoc. Ins. Agency*, 234 Neb. 651, 452 N.W.2d 517 (1990); *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987). Accordingly, I would affirm the trial court's jury instructions placing the burden of proof on Cosgriff.

## CONCLUSION

Cosgriff failed to object to the jury instructions at trial. Cosgriff's defenses were presented to the trial court as affirmative defenses. Although the jury instructions could have been more artfully drafted, Cosgriff's failure to timely object and his characterization of his defenses as affirmative defenses waived his right to assert prejudicial error on appeal. The trial court's use of such jury instructions should not constitute plain error, and I would affirm the district court's holding.