MARGARET ALLPHIN, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES W. ALLPHIN III, DECEASED, APPELLANT, v. RICHARD K. WARD, M.D., APPELLEE.

570 N.W. 2d 360

Filed November 14, 1997.    No. S-95-1401.

John K. Green for appellant.

Raymond E. Walden and Mark E. Novotny, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, STEPHAN, and McCORMACK, JJ., and FAHRNBRUCH, J., Retired.

STEPHAN, J.

Margaret Allphin, as personal representative of the estate of her late husband, Charles W. Allphin III, brought this wrongful death action against Richard K. Ward, M.D., alleging that Ward's negligence caused her husband's death on July 14, 1991. Allphin appeals from a judgment entered on a jury verdict in favor of Ward. We affirm the judgment of the district court because we find no error appearing of record.

## BACKGROUND

This case was tried before a jury in the district court for Platte County on October 23 through 27, 1995. The appeal focuses upon two portions of Allphin's testimony. During direct examination, Allphin was asked, in reference to her husband, "What do you miss about him?" She responded, "His companionship, his hugs. We've had some real financial struggles, but I don't miss that, I just miss — when he died, I died, too. We were spiritually one and . . . ."

During her cross-examination by Ward's counsel, Allphin testified as follows:

Q I noticed you have an attractive ring on your left hand, are you engaged at this time?

A I have a band on my hand because I don't want to be pestered.

Q Are you engaged at this time?

A Yes, I am.

Q And is that [T.N.] who I spoke of the other day?

A Yes.

Q Or yesterday. And when do you plan on being married?

A We haven't set a date.

The verbatim record prepared by the court reporter contains no objection or motion to strike directed to this testimony, nor does it reflect any side-bar conferences occurring immediately before, during, or after the testimony.

The record reflects that Ward's counsel then elicited the following testimony from Allphin:

Q . . . I have some answers to some questions that were exchanged during the course of this lawsuit and I want to show them to you. Do you recall me sending some interrogatories to your attorney that you were consulted on to answer?

A It's possible.

Q And maybe you might want to look at the second to last page, which has your signature on it, is that your signature?

A Yes, it is.

Q Do you think you read through these prior to signing them?

A Probably not, they probably — if I read through them — there has been so much stuff go between this lawsuit and the lawsuit that he was involved in that I've had to sign.

Q And the one thing I'm interested in if you look at answer number three, which would be, I'm sorry, answers to number two, which is one of the interrogatories I asked you for persons who would be essentially experts for you, do you see that question?

A So you're asking me - - -

Q Did I paraphrase that question correctly?

A If I understand what it says, "Have I discussed this with anyone other than experts?" Is that - - -

Q Well, or experts, yes?

A Yes, I have discussed this.

Q And one of your answers list [sic] Dr. J. Tyler Martin, M.D. from Norfolk?

A Boy, I don't even know Dr. Martin.

Q I've attached to the interrogatories a copy of his report, have you seen that before?

At this point, the record indicates that Allphin's counsel asked for leave to approach the bench and that an "[o]ff-the-record discussion was had in low tones at the bench." Cross-examination of Allphin then continued:

Q . . . Let me ask you this: Do you know if Dr. Martin's coming to testify?

A I don't know Dr. Martin. I don't recall, not that I don't know but when Charlie was in the hospital between

the time that he was there in June we had one set of doctors and then July came and all of the sudden there was a whole other set of doctors so Dr. Martin might have been an intern in either set. It was you got to know one group, confiding in one, and I wasn't hardly allowed to talk to the doctors, I had to talk to the interns who then talked to the doctors so Dr. Martin might have been in one of those groups, but I can't recall.

The verbatim record prepared by the court reporter contains no objection or motion to strike with respect to this testimony, which concluded Allphin's cross-examination.

Allphin filed a motion for new trial, which was heard by the court on November 17, 1995, approximately 3 weeks after the jury returned its verdict in favor of Ward. Ward's counsel did not appear because of confusion regarding the hearing date. At the beginning of the hearing, Allphin's counsel stated that he wished "to make a record confirming some events both prior to and during the course of the trial." He then made an unsworn narrative statement on the record pertaining to the issues of Allphin's engagement and Martin's involvement in the case. Allphin's counsel stated that he had made an "oral motion in limine" at the final pretrial conference "to exclude any evidence, testimony, or comments of counsel relating to the surviving spouse's present engagement, living arrangements, or any personal relationship she was in." He stated that the court had sustained the motion and instructed Ward's counsel accordingly. Allphin's counsel stated that this motion had been renewed during a short hearing prior to trial on October 23, 1995, with the same ruling and instruction being given by the court. He further stated that later on that day, after Allphin's testimony during her direct examination about what she missed about her late husband, and her response to the initial question during her cross-examination about the ring on her left hand, he requested a side-bar conference during which he objected to the question and any further questions on the same subject "outside the hearing of the court reporter." Allphin's counsel stated that based upon the argument of Ward's counsel that Allphin's direct testimony had "opened the door" to questioning about her engagement and remarriage plans, the court overruled the objection and permitted the testimony.

Allphin's counsel also represented in his narrative statement to the court that prior to the commencement of trial on October 23, 1995, he made an "oral motion in limine to prohibit the defendant or defense counsel from making any reference to any opinion reports of Dr. J. Tyler Martin . . . ." He further represented that the court had sustained this motion on the ground that the report would constitute hearsay, and that it ordered Ward's counsel "not to mention Dr. J. Tyler Martin or any of his opinions." Allphin's counsel also stated that the court repeated this instruction during the side-bar conference which immediately preceded the last question Ward's counsel asked Allphin concerning Martin.

Allphin's counsel then stated: "That concludes the portion of the record we would like to make for purposes of the motion for new trial, Judge, other than to [sic] I think we need the court's acknowledgment that side bars did take place and that those were the rulings." The district judge responded: "The side bars did take place and I believe that's the correct resitation [sic] of it, Mr. Gleason." The judge then took the motion for new trial under advisement and, on December 1, 1995, overruled it.

Allphin filed a notice of appeal, a praecipe for transcript, and a praecipe for bill of exceptions on December 28, 1995. The "Clerk's Index to Transcript" certified on the same date contains the notation: "No Plaintiff's Motion in Limine filed with the Platte County District Court." On June 3, 1996, Ward's counsel filed a motion to amend the bill of exceptions pursuant to Neb. Ct. R. of Prac. 5B(5) (rev. 1996). Allphin's counsel filed a resistance to this motion, and a hearing was held on June 14, 1996. During the hearing, at which Allphin's counsel did not appear for reasons not apparent from the record, Ward's counsel made an unsworn narrative statement on the record in which he disputed portions of the previous statement made by Allphin's counsel at the hearing on the motion for new trial. Specifically, Ward's counsel stated that the off-the-record discussion during which the court ruled that Allphin had "opened the door" to questioning about her remarriage plans occurred in chambers prior to the resumption of trial on October 23, 1995, and that there were no side-bar conferences or objections during cross-examination on this subject. Ward's counsel further

stated that prior to trial, he was instructed not to question witnesses about Dr. Martin's report; the court reminded him of this instruction during the side-bar conference during Allphin's testimony; and he did not at any time ask questions about the report. He then stated: "Again, your Honor, I'd ask either this hearing be included or in the alternative stricken from the bill of exceptions that portion of Mr. Gleason's discussion with the court asking for confirmation of the events or any other relief that the court thinks proper." The district court responded by stating on the record: "Well, I'm going to allow this amendment and this discussion will be included because it's my recollection it's as you have stated to the court here today and not as Mr. Gleason stated at the time of the hearing. Please journalize." On July 2, 1996, the district court made a journal entry reflecting that Ward's motion to amend the bill of exceptions had been granted and that the "hearing on defendant's motion to amend bill of exceptions be included as an amendment to the bill of exceptions in this matter."

Pursuant to our authority to regulate the caseloads of the Court of Appeals and this court, we removed this case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Restated, Allphin asserts that the trial court erred in permitting inquiry concerning (1) the engagement ring she wore during the trial and her intent to remarry, and (2) Martin's involvement in the case.

## STANDARD OF REVIEW

On appeal, a judgment entered by the district court may be reversed, vacated, or modified for errors appearing on the record. Neb. Rev. Stat. § 25-1911 (Reissue 1995).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by those rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

## ANALYSIS

Our task of determining whether there is error appearing on the record in this case is made unnecessarily difficult by the unusual record before us. The bill of exceptions contains not only the verbatim record made by the court reporter during trial, but also the conflicting posttrial narrative statements by counsel regarding unrecorded discussions and rulings during a pretrial conference and at side-bar conferences during trial. The trial judge acknowledged each of these posttrial statements by counsel as correct at the time they were made. If the court reporter had been asked to make a contemporaneous verbatim record of proceedings held out of the presence of the jury, the resulting conflict regarding the content of the record would have been avoided. See Neb. Ct. R. of Prac. 5A(2) (rev. 1996). However, for purposes of resolving this appeal, we need not determine the validity of such contradictory amendments to the record; we assume without deciding that the narrative statements of counsel and the trial court's comments with respect to those statements are properly included in the record on appeal.

Two general principles govern our analysis. The first is set forth in Neb. Evid. R. 103(1)(a), Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1995), which provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

. . . In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if a specific ground was not apparent from the context . . . .

See, also, *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996); *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995). The second is the established rule that it is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, the decision of the lower court will generally be affirmed. *Van Ackeren v. Nebraska Bd. of Parole,* 251 Neb. 477, 558 N.W.2d 48 (1997); *WBE Co. v. Papio-Missouri River Nat. Resources Dist.,* 247 Neb. 522, 529 N.W.2d 21 (1995).

We first address Allphin's contention that the district court erred in admitting evidence regarding her engagement ring and

intent to remarry. Even if we accept Allphin's account of the oral motion in limine, the subsequent objection addressed to this issue, and the court's rulings thereon, the record reflects no specific ground for objection as required by rule 103(1)(a). To preserve a claimed error in admission of evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992); *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990). In addition, it is undisputed that Allphin did not object to questions on this subject after the court apparently reversed its previous ruling on the oral motion in limine on grounds that Allphin's direct testimony had "opened the door" to inquiry on cross-examination. When a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial in order to preserve error for appeal. *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995); *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990). Allphin's objection to evidence concerning her plans to remarry was not properly made and preserved for appeal, and her assignment of error regarding the admission of this evidence is therefore without merit.

Allphin also assigns error "in allowing the admissibility of evidence relating to the purported opinions" of Martin, after a motion in limine directed to such evidence was sustained. In his unsworn statement at the hearing on the motion for new trial, Allphin's counsel represented that the oral motion in limine sought "to prohibit the defendant or defense counsel from making any reference to any opinion reports of Dr. J. Tyler Martin" and that the court sustained the motion "because to allow any reference to the report would be hearsay and then prejudicial unless the whole report were allowed." He further stated that the court "directed counsel for the defendant not to mention Dr. J. Tyler Martin or any of his opinions." During Allphin's brief cross-examination on this subject, she was not asked about Martin's "opinions" or "reports." Rather, she was asked if she knew Martin and if he was coming to testify. Allphin responded that she did not know him and speculated as to who Martin

might be. The record contains no objection to these questions, no motion to strike the answers, and no indication of any specific ground upon which Allphin contends the testimony should have been excluded. Therefore, no error was preserved for appeal. See *Barks, supra.*

We conclude that both of Allphin's assignments of error are without merit and therefore affirm the judgment of the district court.

AFFIRMED.

GERRARD, J., not participating.